AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* Subject Devices 1 through 7, further described in Attachment A, Currently located at HSI Cincinnati office, 9875 Redhill Drive, Blue Ash, Ohio 45242 | ) ) ) ) ) Case No.  1:20-mj-714 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
### See Attachment A

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized):*
### See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 and 841(a)(1) | Conspiracy to Possess with Intent to Distribute 400 Grams or more of Fentanyl; |
| 31 U.S.C. 5332(a)(1) and (b) | Conspiracy to Smuggle Cash Illicitly Obtained. |

The application is based on these facts:

### See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Kathleen M. Boyce*
*Applicant's signature*

Kathleen M. Boyce, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.
via FaceTime

Date:  10/6/2020

*Karen L. Litkovitz*
*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Karen L. Litkovitz, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

This warrant applies to the following devices:

1. One (1) LG cellular phone, IMEI: 355388090475575, together with all electronic devices, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 1). Subject Device 1 is currently located in the custody of HSI at the HSI Cincinnati Office, 9875 Redhill Drive, Blue Ash, OH 45242 (and within the Southern District of Ohio). It is depicted in the photographs below:

 

2. One (1) LG cellular phone, IMEI: 354790-11-066277-0, together with all electronic devices, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 2). Subject Device 2 is currently located in the custody of HSI at the HSI Cincinnati Office, 9875 Redhill Drive, Blue Ash, OH 45242 (and within the Southern District of Ohio).  It is depicted in the photographs below:




3. One (1) Black Apple iPhone, together with all electronic devices, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 3). Subject Device 3 is currently located in the custody of HSI at the HSI at the HSI Cincinnati Office, 9875 Redhill Drive, Blue Ash, OH 45242 (and within the Southern District of Ohio). It is depicted in the photographs below:

 

4. One (1) Samsung cellular phone marked Model SM-B311V, MEID(HEX): A00000477FD47B, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 4). Subject Device 4 is currently located in the custody of HSI at the HSI at the HSI Cincinnati Office, 9875 Redhill Drive, Blue Ash, OH 45242 (and within the Southern District of Ohio). It is depicted in the photographs below:




5. One (1) Samsung cellular phone marked Model SM-B311V, MEID(HEX): A00000477F9B75, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 5). Subject Device 5 is currently located in the custody of HSI at the HSI at the HSI Cincinnati Office, 9875 Redhill Drive, Blue Ash, OH 45242 (and within the Southern District of Ohio). It is depicted in the photographs below:

 

6. One (1) Samsung cellular phone marked Model SM-B311V, MEID(HEX): A0000047793007, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 6). Subject Device 6 is currently located in the custody of HSI at the HSI at the HSI Cincinnati Office, 9875 Redhill Drive, Blue Ash, OH 45242 (and within the Southern District of Ohio). It is depicted in the photographs below:




7. One (1) Black Garmin nuvi 50 Global Positioning System (GPS) Navigation System (Subject Device 7). Subject Device 7 is currently located in the custody of HSI at the HSI at the HSI Cincinnati Office, 9875 Redhill Drive, Blue Ash, OH 45242 (and within the Southern District of Ohio). It is depicted in the photographs below:



This warrant authorizes the forensic examination of Subject Device 1, Subject Device 2, Subject Device 3, Subject Device 4, Subject Device 5, Subject Device 6, and Subject Device 7, for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Subject Devices described in Attachment A that relate to violation of Title 21 U.S.C. § 846 and 841 (a)(1) and (b)(1)(B) and Title 31 U.S.C. § 5332(a)(1) and (b)(1), involving Jose Antonio GARCIA, Jr., including but not limited to:

   a.   Lists of contacts and related identifying information;

   b.   Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c.   Any information related to transferring, transporting of currency to include banking information;

   d.   Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e.   Any information recording GARCIA's schedule or travel, such as the use of hotel rooms or other lodging, rental cars, or airline information; all bank records, checks, credit card bills, account information, and other financial records.

   f.   Evidence of communication and association between GARCIA and his co-conspirators, including "WhatsApp" or other cell phone applications used to communicate, text messages, photographs, email, Facebook, or other social media, phone call logs, and stored phone numbers;

   g.   Evidence of user attribution showing who used or owned the Subject Devices at the time the items described in this warrant were created, edited, or deleted, such as

logs, phonebooks, saved usernames and passwords, documents, and browsing history;

h.  Records of navigational and location information associated with GARCIA's criminal activity;

i.  Records evidencing the use of any Internet Protocol addresses to communicate with Facebook or any other website, including:

j.  Records of Internet Protocol addresses used;

k.  Records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | Case No.  1:20-mj-714 |
| LG cellular phone, IMEI: 355388090475575 (Subject Device 1); | Judge |
| LG cellular phone, IMEI: 354790-11-066277-0 (Subject Device 2); | |
| Black Apple iPhone (Subject Device 3); | |
| Samsung cellular phone marked Model SM-B311V, MEID(HEX): A00000477FD47B (Subject Device 4); | |
| Samsung cellular phone marked Model SM-B311V, MEID(HEX): A00000477F9B75 (Subject Device 5); | |
| Samsung cellular phone marked Model SM-B311V, MEID(HEX): A0000047793007 (Subject Device 6); | |
| Black Garmin Global Positioning System (GPS) Navigation System (Subject Device 7). | |
| CURRENTLY LOCATED AT HSI Cincinnati office, 9875 Redhill Drive, Blue Ash, Ohio 45242 | |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Kathleen M. Boyce, being first duly sworn, hereby depose and state as follows:

1

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the United States Department of Homeland Security Investigations (HSI), and have been since August 2010. Affiant attended and graduated from the basic agent training course in Brunswick, Georgia. Affiant was then assigned to the HSI Miami Office, where Affiant was assigned to the Miami International Airport (MIA) Passenger Conspiracy Response Group and specialized in drug trafficking and money laundering investigations. In March 2016, Affiant was reassigned to the HSI Buffalo Office Financial Group, specializing in money laundering, virtual currency, bank fraud, and bulk cash smuggling investigations. Since October 2017, Affiant has been assigned to the HSI Border Enforcement Security Task Force (BEST) in Dayton, Ohio. Affiant has received extensive training in the investigation of narcotics trafficking and financial crimes from HSI, as well as ongoing in-service training.

3.      As a Special Agent for HSI, Affiant is charged with the duty of enforcing among other Titles, the Controlled Substance Act, Title 21, United States Code, together with other assigned duties as imposed by federal law.

4.      By virtue of my employment with HSI, I perform and have performed various tasks which include, but are not limited to:

a.  Functioning as a surveillance agent for the primary purpose of observing movements of drug traffickers and those suspected of trafficking in drugs;

b. Functioning as a case agent which entails the supervision of specific aspects of drug investigations; and,

c. The tracing and tracking of monies and assets gained by drug traffickers from the illegal sale of drugs.

5. I seek the issuance of a search warrant. There is probable cause that Jose Antonio GARCIA violated Title 21 U.S.C. § 846 and 841 (b)(l)(A) (conspiracy to possess with intent to distribute 400 grams or more of fentanyl) and Title 31 U.S.C. § 5332(a)(1) and (b)(1) (conspiracy to smuggle cash illicitly obtained). All of the details of the investigation are not included in this Affidavit, rather only information necessary to establish probable cause to search Subject Devices 1 through 7. There is probable cause to believe that evidence of these violations is contained within the cellular telephones and GPS Navigation System as further described and depicted in Attachment A. The information contained in this affidavit comes from my personal knowledge and facts relayed to me by other law enforcement officers.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched is

a. LG cellular phone, IMEI: 355388090475575 (Subject Device 1);

b. LG cellular phone, IMEI: 354790-11-066277-0 (Subject Device 2);

c. Black Apple iPhone (Subject Device 3);

d. Samsung cellular phone marked Model SM-B311V, MEID(HEX): A00000477FD47B (Subject Device 4);

e. Samsung cellular phone marked Model SM-B311V, MEID(HEX): A00000477F9B75 (Subject Device 5);

3

f.   Samsung cellular phone marked Model SM-B311V, MEID(HEX):

A0000047793007 (Subject Device 6);

g.   Black Garmin Global Positioning System (GPS) Navigation System (Subject

Device 7),

hereinafter the "Subject Devices." The Devices are currently located at HSI Cincinnati

office, 9875 Redhill Drive, Blue Ash, Ohio 45242.

7.     The applied-for warrant would authorize the forensic examination of the Subject

Devices for the purpose of identifying electronically stored data particularly described in

Attachment B.

## PROBABLE CAUSE

8.     Together with agents and officers of the HSI Cincinnati Border Enforcement

Security Task Force ("BEST"), agents from the Federal Bureau of Investigation (FBI), and officers

from the Hamilton County Sheriff's Office (HCSO) Regional Enforcement Narcotics Unit

(RENU), Affiant is currently involved in the investigation related to the drug offenses believed to

have been committed by Jose Antonio GARCIA (GARCIA). Based upon the investigation to date,

there is probable cause to believe that GARCIA violated Title 21 U.S.C. § 846 and 841(a)(1) and

(b)(l)(A) (conspiracy to possess with intent to distribute 400 grams or more of fentanyl) and Title

31 U.S.C. § 5332(a)(1) and (b)(1) (conspiracy to smuggle cash illicitly obtained). Unless otherwise

noted, when Affiant asserts that a statement was made, Affiant received the information from a

law enforcement officer who provided the information to Affiant, either verbally or in a written

report. The officer providing Affiant with the information may have received the information by

way of personal knowledge or from another source.

9.      During the course of this investigation, HSI Cincinnati received information regarding a planned exchange of illicitly obtained bulk U.S. Currency that was to take place in West Chester, OH. On August 3, 2020, a known Mexican money broker contacted an HSI Undercover Agent (UCA) and offered a contract to pick up and launder USD $300,000 from the Cincinnati, Ohio, area. The UCA accepted the contract and shortly thereafter received a telephone call from phone number 513-675-4460. The UCA spoke with an English and Spanish speaking adult male regarding the proposed money pick-up. The UCA and the unknown user of 513-675-4460 determined USD $120,000 would be exchanged, and agreed to meet on or about Wednesday, August 5, 2020, at the Home Depot located at 7749 Dudley Dr., West Chester, Ohio 45069.

10.      Based on the information provided, Affiant conducted a series of database checks related to phone number 513-675-4460. Affiant learned the phone number is a pre-paid cellular phone with no subscriber information. Through Affiant's training and experience, Affiant knows that individuals involved in drug trafficking often use pre-paid cellular phones while conversing with others regarding their criminal activity so the phones are not associated to their true identity if tracked by law enforcement.

11.      On August 3, 2020, HSI Task Force Officer (TFO) Joshua Walters obtained a search warrant authorizing "PING" locations for telephone number 513-675-4460. The warrant was signed by Montgomery County Court of Common Pleas Judge Richard Skelton.

12.      On August 4, 2020, Affiant observed the GPS location data for telephone number 513-675-4460 showed the phone to be in the area of Pancoast Ave, Cincinnati, Ohio 45211.

13.      On August 5, 2020, at approximately 11:00 am, agents established surveillance on Pancoast Avenue.

14.     On that same date, at approximately 11:25 am, an HSI TFO observed a silver Nissan sedan bearing OH Dealer Plate 008S9QN depart 2610 Pancoast Avenue, Cincinnati, Ohio 45211, and relayed its direction of travel to agents in the area assisting with surveillance. Agents observed the vehicle was occupied by a single Hispanic male.

15.     At approximately 11:30 am, the UCA placed a call to phone number 513-675-4460 and stated he would be at the meet location in approximately 30 minutes.

16.     Agents maintained surveillance of the silver Nissan sedan as it traveled directly to 2725 Orland Ave, Cincinnati, Ohio 45211. The vehicle entered the driveway to the right of the house and traveled to the rear of the house, out of agents' view.

17.     At approximately 11:40 am, agents observed a Volvo SUV depart the driveway of 2725 Orland Ave, after which it traveled directly to 2610 Pancoast Ave, entered the garage attached to the residence, and the garage door closed behind the vehicle. Agents continued to maintain surveillance of the residence located at 2725 Orland Ave.

18.     At approximately 11:53am, agents conducting surveillance at 2610 Pancoast Ave observed the garage door open and the Volvo exit the garage. Agents closely surveilled the vehicle as it departed the area, traveling toward Interstate 75 (I-75).

19.     At approximately 12:02 pm, agents observed the Volvo traveling north on Interstate 75 in the area of Mitchell Avenue and noted the vehicle committed several traffic and equipment violations to include speed, following too close, and overly tinted windows. Investigators relayed the Volvo's location and direction of travel to Ohio State Highway Patrol Trooper Joseph Weeks who was in the area assisting with surveillance.

20.     At approximately 12:06 pm, OSP Trooper Weeks pulled behind the Volvo and conducted a traffic stop of the vehicle on I-75 N, just north of the Mitchell Avenue Exit, after observing the aforementioned traffic violations.

21.     Upon approach, Trooper Weeks identified the driver of the vehicle as Jose Antonio GARCIA Jr., who presented a California Driver's license.

22.     Trooper Weeks received consent from GARCIA to search the Volvo. Trooper Weeks also deployed his K-9 partner, K-9 Bleck, to conduct a free-air sniff of the vehicle. K-9 Bleck gave a positive indication for narcotics on the Volvo at the rear trunk door seam. Officers subsequently located a hidden trap compartment in the trunk area of the vehicle. A search of the trap compartment revealed bulk U.S. currency, packaged in clear vacuum-sealed wrapping. The total count of the currency seized from the vehicle was later determined to be $120,457.

23.     During that same encounter with GARCIA, officers also located and seized Subject Device 1, Subject Device 2, and Subject Device 3, from GARCIA, as evidence.

24.     In a post Miranda interview, GARCIA stated there was approximately USD $200,000 to $300,000 dollars inside the residence at 2610 Pancoast Ave, and that he was traveling from Westwood, to Home Depot, when stopped by officers. He also stated he was to be paid USD $8,000 for each money drop that he completed.

25.     On August 5th, 2020, RENU Agent Rasheed Kassem drafted a search warrant for 2610 Pancoast Ave, and the Honorable Judge Bernie Bouchard, from the Hamilton County, Ohio Courts reviewed and signed the warrant.

26.     On August 5th, 2020, at approximately 1:26 pm, RENU agents executed the search warrant at 2610 Pancoast Ave. Agents located three firearms, $340,323 in bulk U.S. currency, 643.8 grams of marijuana, packaging materials containing drug residue, a digital measuring scale,

and additional evidentiary items, to include Subject Device 4, Subject Device 5, Subject Device 6, and Subject Device 7.

27.     At approximately 3:05pm, agents maintaining surveillance of 2725 Orland Ave observed a grey Nissan Altima bearing Ohio temporary tag L260576 stop in front of 2725 Orland Ave, and an unknown black male exited the vehicle and walked to the rear of the residence. The grey Nissan traveled down the street on Orland Ave and parked. Approximately 10 minutes later, the grey Nissan traveled back to 2725 Orland Ave and the unknown black male exited the residence with a brown box, a book bag, and multiple trash bags. The male entered the vehicle after placing the box and bags inside, and the vehicle traveled on Orland Ave toward Westknolls Lane.

28.     A short time later, in order to stop the destruction or tampering of evidence, agents approached the individuals in the grey Nissan and detained them for further investigation. Agents located the box and bags placed in the vehicle by the unknown male and discovered approximately six saran-wrapped packages of bulk U.S. Currency later determined to be $165,330, a vacuum-sealed freezer bag containing two can-shaped objects wrapped in black electrical tape, bulk marijuana, and drug packaging materials inside. Agents probed the two can-shaped objects producing a white powdery substance. The Hamilton County Crime Laboratory (HCCL) later determined the white powdery substance to be 498.934 grams of a fentanyl/heroin mixture, and the weight of the marijuana was determined to be 445.6 grams. Based upon my training and experience, 498.934 grams of fentanyl is an amount of fentanyl consistent with drug trafficking.

29.     The unknown male seen exiting the residence was later determined to be Derrick Wayne FERRIS, a/k/a Kelvin CROOM. At the time of his encounter, officers located two separate bags from FERRIS' right pant pocket, both containing a white powdery substance. The HCCL

later determined one bag contained 5.35 grams of fentanyl and the other contained 2.331 grams of cocaine.

30.     GARCIA and FERRIS were subsequently arrested, and on August 6, 2020, criminal complaints were filed before United States Magistrate Judge Karen L. Litkovitz, charging GARCIA and FERRIS with violation of Title 21 U.S.C. § 846 and 841 (a)(1) and (b)(1)(B) (conspiracy to possess with intent to distribute 400 grams or more of fentanyl) and Title 31 U.S.C. § 5332(a)(1) and (b)(1) (conspiracy to smuggle cash illicitly obtained).

31.     On August 12, 2020, AUSA Christy L. Muncy presented the case to the Grand Jury in the U.S. District Court for the Southern District of Ohio. The Grand Jury returned an Indictment charging GARCIA and FERRIS with one count of Narcotics Conspiracy, in violation of 21 U.S.C. § 846 and one count of Bulk Cash Smuggling into or out of the United State, in violation of 31 U.S.C. § 5332(a)(1) and (b) with allegations of forfeiture.

32.     Your affiant believes Subject Devices 1 through 7 may contain evidence of communication between GARCIA and additional co-conspirators and other evidence related to drug trafficking by these individuals. Your Affiant requests permission to search the electronic data stored in Subject Devices 1 through 7 to locate any other evidence of drug trafficking activity that may be inside.

33.     In Affiant's experience, cellular phones are often used by criminals to carry out their business. Criminals often use the phones to communicate (either by voice, text message, or internet-based communication accessed by the phone) with customers, suppliers, and associates about pending criminal activity. It is also common to find photographs of their criminal associates stored on the phones, as well as photos of weapons, drugs, money, or assets associated with their illegal activity. Criminals will often store phone numbers for their associates in the cellular phone,

and sometimes use alias or code names for those entries. Electronic evidence stored on the phone also can show who used a particular cellular phone, because criminals often use prepaid phones or fake subscriber names when obtaining the phone from the service provider. Criminals commonly have multiple phones at a given time, with certain phones used to communicate with particular individuals or for specific purposes. By searching the data stored on the phones, your affiant believes evidence of GARCIA's criminal activity may be revealed.

34. Based upon my training and experience and my knowledge of this investigation I also know that drug traffickers/distributors utilize numerous geographic locations in which to store controlled substances, known as stash locations. Drug Trafficking Organizations (DTOs) also have multiple distributors in geographic regions in which the controlled substances are sold on the streets throughout the United States. In my experience, it has become common for individuals to utilize Global Positioning System (GPS) Navigation Systems to guide them from location to location so as not to get lost. Based upon my training and experience, it is important for drug couriers to know where they are taking their illegal cargo. The risk of being detected by law enforcement increases if the driver becomes disorientated and/or becomes lost, often resulting in illegal U-turns or speeding, which also increases the length of time it takes for the courier to arrive at a destination. It is common for individuals to input common locations into the memory of the GPS unit to quickly calculate a route of travel. I believe that the GPS Navigation System found inside GARCIA's residence may contain addresses of stash locations and drug distribution points.

35. The Devices are currently in the lawful possession of the HSI Cincinnati office, located at 9875 Redhill Drive, Blue Ash, Ohio 45242. They came into the HSI's possession in the following way: Subject Devices 1 – 3 were seized from GARCIA, Jr. during a traffic stop on August 5, 2020; Subject Devices 4 – 7 were seized from 2610 Pancoast Ave., Cincinnati, Ohio

45211, during the execution of a search warrant. Therefore, while the HSI might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

36.     The Devices are currently in storage at HSI Cincinnati office, 9875 Redhill Drive, Blue Ash, Ohio 45242. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the HSI.

## TECHNICAL TERMS

37.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading

11

information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved

12

in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of

four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

38. Based on my training, experience, and research, I know that Subject Devices 1 through 6 are cellular telephones, and that most modern cellular telephones have capabilities that allow them to serve as "a wireless telephone, digital camera, portable media player, GPS navigation device, and PDAs." In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

39. Based on my training, experience, and research, I know that Subject Device 7 is a GPS Navigation System, and that most GPS Navigation Systems have capabilities that allow them to store memory related to navigational and location information associated with the individual(s) who have used the device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals addresses of stash locations and drug distribution points.

14

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

40.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

41.     *Forensic evidence*.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Subject Devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Subject Devices because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review

15

team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

42. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Subject Devices to human inspection in order to determine whether it is evidence described by the warrant.

43. *Manner of execution.* Because this warrant seeks only permission to examine a devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

44.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Subject Devices 1 through 7 as described in Attachment A to seek the items described in Attachment B, which are evidence of violation of Title 21 U.S.C. § 846 and 841 (a)(1) and (b)(1)(B) (conspiracy to possess with intent to distribute 400 grams or more of fentanyl) and Title 31 U.S.C. § 5332(a)(1) and (b)(1) (conspiracy to smuggle cash illicitly obtained).

Respectfully submitted,

Kathleen M. Boyce

Kathleen M. Boyce
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on this   6th  day of October, 2020.

Karen L. Litkovitz

Honorable Karen L. Litkovitz
United States Magistrate Judge

## ATTACHMENT A

This warrant applies to the following devices:

1. One (1) LG cellular phone, IMEI: 355388090475575, together with all electronic devices, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 1). Subject Device 1 is currently located in the custody of HSI at the HSI Cincinnati Office, 9875 Redhill Drive, Blue Ash, OH 45242 (and within the Southern District of Ohio). It is depicted in the photographs below:



2. One (1) LG cellular phone, IMEI: 354790-11-066277-0, together with all electronic devices, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 2). Subject Device 2 is currently located in the custody of HSI at the HSI Cincinnati Office, 9875 Redhill Drive, Blue Ash, OH 45242 (and within the Southern District of Ohio).  It is depicted in the photographs below:




3. One (1) Black Apple iPhone, together with all electronic devices, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 3). Subject Device 3 is currently located in the custody of HSI at the HSI at the HSI Cincinnati Office, 9875 Redhill Drive, Blue Ash, OH 45242 (and within the Southern District of Ohio). It is depicted in the photographs below:




4.  One (1) Samsung cellular phone marked Model SM-B311V, MEID(HEX): A00000477FD47B, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 4). Subject Device 4 is currently located in the custody of HSI at the HSI at the HSI Cincinnati Office, 9875 Redhill Drive, Blue Ash, OH 45242 (and within the Southern District of Ohio). It is depicted in the photographs below:

 

4

5. One (1) Samsung cellular phone marked Model SM-B311V, MEID(HEX): A00000477F9B75, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 5). Subject Device 5 is currently located in the custody of HSI at the HSI at the HSI Cincinnati Office, 9875 Redhill Drive, Blue Ash, OH 45242 (and within the Southern District of Ohio). It is depicted in the photographs below:

 

6. One (1) Samsung cellular phone marked Model SM-B311V, MEID(HEX): A0000047793007, including Subscriber Identity Modules, or SIM cards, contained therein (Subject Device 6). Subject Device 6 is currently located in the custody of HSI at the HSI at the HSI Cincinnati Office, 9875 Redhill Drive, Blue Ash, OH 45242 (and within the Southern District of Ohio). It is depicted in the photographs below:

 

7. One (1) Black Garmin nuvi 50 Global Positioning System (GPS) Navigation System (Subject Device 7). Subject Device 7 is currently located in the custody of HSI at the HSI at the HSI Cincinnati Office, 9875 Redhill Drive, Blue Ash, OH 45242 (and within the Southern District of Ohio). It is depicted in the photographs below:



This warrant authorizes the forensic examination of Subject Device 1, Subject Device 2, Subject Device 3, Subject Device 4, Subject Device 5, Subject Device 6, and Subject Device 7, for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Subject Devices described in Attachment A that relate to violation of Title 21 U.S.C. § 846 and 841 (a)(1) and (b)(1)(B) and Title 31 U.S.C. § 5332(a)(1) and (b)(1), involving Jose Antonio GARCIA, Jr., including but not limited to:

     a.  Lists of contacts and related identifying information;

     b.  Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

     c.  Any information related to transferring, transporting of currency to include banking information;

     d.  Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

     e.  Any information recording GARCIA's schedule or travel, such as the use of hotel rooms or other lodging, rental cars, or airline information; all bank records, checks, credit card bills, account information, and other financial records.

     f.  Evidence of communication and association between GARCIA and his co-conspirators, including "WhatsApp" or other cell phone applications used to communicate, text messages, photographs, email, Facebook, or other social media, phone call logs, and stored phone numbers;

     g.  Evidence of user attribution showing who used or owned the Subject Devices at the time the items described in this warrant were created, edited, or deleted, such as

logs, phonebooks, saved usernames and passwords, documents, and browsing history;

h. Records of navigational and location information associated with GARCIA's criminal activity;

i. Records evidencing the use of any Internet Protocol addresses to communicate with Facebook or any other website, including:

j. Records of Internet Protocol addresses used;

k. Records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.